**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated:  March 29 2024**

_____
John P. Gustafson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.  21-32089 |
| | ) | |
| Louis Thomas Bauer, Jr., | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge John. P. Gustafson |

## <u>MEMORANDUM OF DECISION REGARDING OBJECTION TO CLAIM</u>

This matter comes before the court upon pro se Debtor's Louis Thomas Bauer, Jr.'s ("Debtor") *Objection to Claim Number 3 by Claimant Perrysburg Land Company* ("Objection"). [Doc. #64].  Perrysburg Land Company ("Creditor") filed a *Response to Debtor's Objection to Claim No. 3* ("Response"). [Doc. #74].  Debtor did not file a reply.  An Order for Evidentiary Hearing was entered on June 29, 2023, scheduling the evidentiary hearing on Debtor's Objection for August 2, 2023. [Doc. #146].

On August 2, 2023, the court held the evidentiary hearing on the Objection.  Debtor, Creditor, and Creditor's counsel attended the hearing in person.  The Chapter 13 Trustee attended

the hearing telephonically. At the hearing, Debtor, Creditor, and Creditor's counsel presented testimony and other evidence in support of their respective positions.

For the reasons below, Debtor's Objection will be sustained.

## JURISDICTION AND VENUE

The district court has jurisdiction over this Chapter 13 case under 28 U.S.C. §1334. This case has been referred to this court by the district court under its general order of reference. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Matters concerning administration of the estate and allowance or disallowance of claims are core proceedings that the court may hear and determine. 28 U.S.C. §§157(a), (b)(2)(A), (B). Venue is proper under 28 U.S.C. §1409(a).

These findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014. *See e.g., Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 710 (6th Cir. 1999). Whether or not specifically referred to in this Memorandum of Decision, the court has examined all the submitted materials, weighed and observed the demeanor and credibility of the three witnesses, carefully considered all the evidence, and reviewed the entire record of the case in determining the facts pertinent to the case and drawing conclusions therefrom. *See e.g., In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005)("In doing so, the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, . . .").

## FACTS

A full account of Debtor's filing history, including Debtor's previous bankruptcy cases, is set forth in this court's *Order re: Motion to Continue Hearing*. [Doc. #136]. The court adopts and incorporates the Background section as if set forth herein. [*Id.*, pp. 1–9].

2

In 1988, Debtor purchased real property, consisting of three lots at 190 W.S. Boundary, Perrysburg, Ohio ("Property"), located in a shopping center known as Country Charm Plaza, and placed a carwash on the Property after the City of Perrysburg granted a variance. (Testimony of Louis Thomas Bauer, August 2, 2023, 2:28:08–28:50 ("Bauer Test.")).  Creditor sued the City of Perrysburg for granting the variance. (*Id.*)  On February 19, 1991, Debtor and Creditor agreed to settle that lawsuit by executing two documents. (*Id.*)  The documents consisted of the Extinguishment of Easements, Grant of Easements, and Declaration of Covenants, Conditions and Restrictions, and the Compromise and Settlement Agreement (hereinafter referred to as the "Shared Maintenance Agreement"). (Creditor's Exs. C, E).  Debtor testified that he executed both documents, and these are the only agreements between Debtor and Creditor. (Bauer Test., 2:39:36–40:05).

Pursuant to Paragraph 11 of the Shared Maintenance Agreement, Creditor is responsible for managing the common areas of Country Charm Plaza, such as the parking lot and sidewalk. (DeWood Test., August 2, 2023, 3:04:26–05:01); (Creditor's Ex. E).  The terms outlined in the Shared Maintenance Agreement govern the obligations of various lot owners, including Debtor, in relation to shared costs and expenses incurred by Creditor for maintaining and repairing the common areas, including insurance costs and trash removal. (*Id.* at 03:05:28–06:00, 03:07:31–08:57).  Per the Shared Maintenance Agreement, each owner of property shares in the costs and expenses incurred by Creditor in maintaining and repairing the common areas for that calendar year. (Creditor's Ex. E).

The Shared Maintenance Agreement also governs the monetary amounts and obligations due by each property owner. (*Id.*)  The amounts due by each property owner for that calendar year are paid in monthly installments. (*Id.*)  Failure to pay the monthly installment results in a 10% late

charge. (*Id.*)  There is an additional 8% late charge after ten days. (*Id.*)  Monthly installments that remain unpaid for a year after the due date accrue interest at the rate of 18% a year. (*Id.*)  Furthermore, according to the Shared Maintenance Agreement, Creditor can secure the outstanding balance by obtaining a lien against the Property. (*Id.*)

On February 19, 1991, Creditor sued Debtor for monies allegedly owed. (Creditor's Ex. C).  At issue was the amount of Debtor's proportionate share under the Shared Maintenance Agreement, which was 9%. (Creditor's Ex. E).  However, the parties executed a Compromise and Settlement Agreement (the "Settlement"), altering, *inter alia*, this figure down to 7.272%. (Creditor's Ex. C); (Bauer Test., 2:34:28–24:36); (DeWood Test., 03:13:08–13:23).

In the Settlement, Creditor and Debtor agreed that Debtor's monthly charge would be "thirty-six percent (36%)" of the 7.272% amount owed. (*Id.* at 03:20:52–21:42).  This would be a monthly payment of approximately $243.84 to be started on July 2002. (Creditor's Ex. C); (*Id.* at 3:22:13–3:22:45).  Further, Debtor agreed to no longer "vote on any matter submitted to the shareholders," granting Creditor a permanent proxy. (Creditor's Ex. C).  Since July 2002, Debtor has not made a payment to Creditor. (DeWood Test., 03:19:54–20:05).

Debtor has not conducted business on the Property for twenty years, and the Property has remained essentially abandoned during that time. (DeWood Test., 03:40:03–41:36).  Nor has Debtor made any payments to Creditor in fifteen or twenty years. (Bauer Test., 2:35:27–2:35:36).  Debtor does not dispute his obligations under the debt but does contest the $460,000.00 figure Creditor presented. (Bauer Test., 2:36:20–2:36:35).

In 2005, Creditor commenced a foreclosure action asserting its lien rights, which was subsequently voluntarily dismissed by Creditor. (Bauer Test., 2:31:58–2:33:21); (Testimony of Creditor attorney Mark W. Sandretto, August 2, 2023, 1:42:52–43:20 ("Sandretto Test.")).  In

2010, Creditor increased the monthly payment by 5% for all individual lot owners. (DeWood Test., at 3:22:41–3:22:48). As a result, Debtor's monthly payment increased from $243.84 to $256.03. (Creditor's Exs. B, F). The amount owed for the billing period ending on December 31, 2013, was $68,661.50. (Creditor's Ex. B). The amount owed for the billing period ending on December 31, 2021, was $337,314.93. (Creditor's Ex. B).

The two Chapter 13 cases filed by the Debtor in 2019 are detailed in the court's *Order re: Motion to Continue Hearing*, Doc. #136.

On October 9, 2020, the Treasurer of Wood County, Ohio, commenced a foreclosure action against the Property. (Debtor's Ex. 20). Creditor was identified as a lienholder or as a party with an interest in the Property. M. Charles Collins represented Creditor in the foreclosure action. (DeWood Test., 03:35:04–36:01).

On July 22, 2021, Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Creditor was not listed or scheduled in that case. Creditor did not file a claim in that case. (DeWood Test., 02:02:12–02:16). On August 31, 2021, the court dismissed Debtor's Chapter 13 case, for cause, including the failure to prosecute the case in accordance with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure and the case was closed on October 12, 2021. Also scheduled for hearing at the same time as the court's *Order to Show Cause* was *Debtor's Motion for Leave for Waiver of Credit Counseling or in the Alternative an Additional 7 Days to Comply Due to Exigent Circumstance*. Because the case was being dismissed, the *Motion for Leave* was denied as moot.

On December 16, 2021, Debtor filed another voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On or about December 16, 2021, Mr. DeWood learned about Debtor's intention of petitioning for relief. (Bauer Test., 2:22:16–22:26). Less than two weeks after Debtor

5

filed a Petition for relief under Chapter 13 of the Bankruptcy Code, Mr. DeWood informed Debtor he was aware of the bankruptcy case. (*Id.* at 2:22:28–22:36). Debtor testified that, in his view, this is when "they" learned about the bankruptcy. (*Id.*) In the foreclosure case, a decree was issued with respect to Debtor's Property, and a sale occurred after the petition for relief was filed in which an entity associated with Mr. DeWood was the successful bidder at the real estate judicial sale. (Sandretto Test., 11:42:49–43:06); (Sandretto Test., 1:34:35–38:01). However, Peter Shawaker, not Mr. DeWood, was Creditor's president at the time Debtor filed this bankruptcy in late 2021. (DeWood Test., 02:09:47–09:59).

In the foreclosure action, Creditor was represented by Mr. Collins. Mr. DeWood did not know Mr. Collins. (DeWood Test., 02:10:44–11:07).

In Creditor's proof of claim, the only charge that postdates the date of filing is the late charge of 18% interest for the year on December 31, 2021. (*Id.*); (DeWood Test., 03:28:28–28:46). The amount owed as of the date of filing appears to be $337,314.93, which is found in the statement for the billing period starting January 1, 2021 and ending December 31, 2021, less the 18% interest consisting of $54,909.25 charged on December 31, 2021. (Creditor's Ex. B); (DeWood Test., 03:28:48–29:09).

On or about December 16, 2021, Debtor filed Notice of Bankruptcy Filing in the foreclosure action. (Creditor's Ex. I); (Debtor's Ex. 20 ("12/16/2021 . . . Correspondence from Louis T Bauer Jr – Certificate of Service: 'Notice of Automatic Stay Federal Bankruptcy filed 12/15/2021'"). Mr. DeWood was not aware Debtor had filed the Notice of Bankruptcy Filing in the docket of the foreclosure action but was generally aware Debtor had filed bankruptcy. (DeWood Test., 03:33:00–33:08).

On March 2, 2022, Creditor substituted Mr. Sandretto as counsel for Mr. Collins in the

6

foreclosure action. (Bauer Test., 2:23:04–23:16); (Sandretto Test., 11:34:36–34:44). Mr. Sandretto was unaware of the bankruptcy filing when he filed his notice of appearance and substituted in for Mr. Collins as counsel in the foreclosure action. (Sandretto Test. 11:34:52–35:25). It appears that shortly after Mr. Sandretto was substituted as counsel, leadership for Creditor transitioned from Mr. Shawaker to Mr. DeWood. (*Id.*, at 11:38:33–38:49).

Mr. Sandretto learned about the bankruptcy case at some time between the dates Mr. Sandretto entered an appearance in the foreclosure action and the proof of claim ["Claim"] was filed. (*Id.*, at 11:41:54–42:01). In March 2022, Mr. DeWood spoke or interacted with Mr. Sandretto for the first time. (DeWood Test., 03:35:49–36:12). Mr. DeWood did not have any knowledge that Creditor itself was aware of the deadline to file claims until after February 22, 2022. (DeWood Test., 03:25:40–25:50).

On March 22, 2022, Mr. Sandretto electronically filed the Claim on behalf of Creditor. (Creditor's Ex. D). Creditor provided the Claim to Mr. Sandretto. (Sandretto Test., 11:51:37–53:10). Mr. Sandretto testified that Mr. Shawaker represented that he had personally signed the Claim. (Sandretto Test., 11:53:26–55:00). Mr. Shawaker made Mr. DeWood aware of the execution of the Claim as an authorized agent for Creditor. (DeWood Test., 03:14:31–14:55). The amount of the filed Claim was $212,589.53. (Creditor's Ex. D).

However, at the time the Claim was filed, the claimed amount did not include the 18% interest and 10% penalty on amounts owed that accrued over time as reflected in the billings dating back to July 1, 2013. (DeWood Test., 03:15:15–16:45); (Creditor's Ex. B). Although an Accounts Receivable Aging Statement was attached, the interest and penalties were not included in the Claim. (Sandretto Test., 12:01:32–01:44). But, a copy of the Shared Maintenance Agreement was attached to the claim. (Creditor's Ex. E). The Claim did not state a value for the Property, or

7

breakdown the amount of the Claim that was secured or unsecured, nor the interest on the Claim. (Sandretto Test., 12:03:06–03:28). Debtor stated that Creditor's proof of claim speaks for itself. (Bauer Test., 2:24:34–23:46).

Mr. DeWood testified he became Creditor's president in March or April 2022. (DeWood Test., 1:56:47–56:5); (*Id.* at 3:03:01–03:07). Mr. DeWood is currently Creditor's president. (Testimony of Matthew D. DeWood, August 2, 2023, 3:02:15–02:53 ("DeWood Test.")). Mr. Shawaker was Mr. DeWood's predecessor as president of Creditor. (*Id.* at 3:02:56–02:59). Mr. DeWood is interested in purchasing the 190 W.S. Boundary Property in the foreclosure action. (*Id.* at 3:43:50–44:10).

In April 13, 2022, the creditor mailed billing statements that were addressed not only to Debtor, but also to Patricia L. Meyer. (DeWood Test., 03:49:48–49:56); (Debtor's Ex. 29A). Mr. DeWood explained Patricia L. Meyer held title to the Property at one point in time. (DeWood Test., 03:49:24–49:36). Mr. Sandretto testified Debtor made an offer to Mr. Sandretto to stipulate to the fact Patricia L. Meyer had no interest in the Property. (Sandretto Test., 1:17:59–18:09). Debtor listed the Property in Schedule A/B and stated "Husband and/or wife" held an interest in the Property. A Midland Title report stated that title to the Property vests in "Patricia L. Meyer, who acquired title as Volume 766 of Deeds, page 329, subject to the interest of [Debtor], per Judgment Entry in Case Number 01CV190, Wood County, Ohio Common Pleas Court." (Creditor's Ex. G).

On May 27, 2022, Debtor objected to Creditor's claim. [Doc. #64]. Debtor's Objection generally raises the following grounds for disallowance: 1) the claim was not timely filed; 2) Debtor is not personally liable on the debt; 3) the claim was not properly signed; 4) the lien securing the debt is not valid; 5) the proof of claim contained certain omissions; and 6) Creditor's

alleged failure to provide Debtor with records. [Doc. ##50, 51, 64].

On July 13, 2023, Creditor filed the Response and asserted the claim should be allowed because Creditor did not have notice of the bankruptcy case or the bar date for filing claims. [Doc. #74]. Creditor also argued the claim was properly signed and completed, the Shared Maintenance Agreement established Debtor's personal liability on the debt, Creditor was not required to move for leave and show excusable neglect, and Debtor had not established that any failure on Creditor's part to provide records impacted the validity of the debt.

On June 29, 2023, the court scheduled the evidentiary hearing on Debtor's Objection for August 2, 2023. [Doc. #146]. The court set July 26, 2023 as the deadline for the parties to file their respective exhibits and witness lists. The parties were ordered to provide a copy of the marked exhibits to opposing counsel by July 26, 2023. Subsequently, Creditor and Debtor filed their respective Exhibit and Witness List on July 26, 2023.

Debtor did not provide Creditor with a copy of the exhibits listed in the filing on July 26, 2023.

On July 28, 2023, Creditor filed a *Motion In Limine to Exclude All Exhibits Identified in Debtor's Exhibit List*. [Doc. #145]. On July 31, 2023, the court set a hearing on the *Motion In Limine* to be heard before the evidentiary hearing on August 2, 2023.

On August 2, 2023, the court held a hearing on Creditor's *Motion In Limine*.

On August 4, 2023, the court granted in part and denied in part Creditor's *Motion In Limine* based on individual findings of prejudice with respect to certain of the late-served exhibits. [Doc. #153].

The evidentiary hearing was then held on Debtor's Objection and Creditor's response.

On August 4, 2023, the court ordered that closing arguments would be in writing, to be

filed no later than August 9, 2023. [Doc. #154]. On August 8, 2023, Debtor filed a motion to extend the time for filing closing arguments. [Doc. #162]. That same day, the court granted both Debtor and Creditor an extension of time to file written closing arguments until August 14, 2023. [Doc. #163].

On August 14, 2023, Debtor and Creditor filed their written closing arguments. [Doc. ##166, 167].

The court now considers whether Debtor's Objection to Creditor's claim should be sustained.

## LAW AND ANALYSIS

The Bankruptcy Code provides that a "creditor . . . may file a proof of claim." 11 U.S.C. §501(a); *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1088 (6th Cir. 1990). "A claim or interest, proof of which is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007)(quoting §502(a))(internal quotation marks omitted); *accord Midland Funding, LLC v. Johnson*, 581 U.S. 224, 230 (2017)(noting allowance of a claim is automatic unless an objection is lodged); *see also,* 4 *Collier on Bankruptcy* ¶502.02[2][c] (Richard Levin & Henry J. Sommer eds., 16th ed.)("The debtor may in some circumstances be a party in interest with standing to object to a proof of claim.").[1]

The filing of a proof of claim in accordance with the Federal Rules of Bankruptcy Procedure constitutes "prima facie evidence of the validity and amount of a claim." *Midland Funding, LLC*, 581 U.S. at 230 (quoting Fed. R. Bankr. P. 3001(f)); *accord State Bank of Florence*

---

1/  The success of Debtor's plan hinges on Creditor's claim. As noted in this court's previous orders, if Creditor's claim is allowed, Debtor's plan will not be confirmable because the plan will not be feasible under 11 U.S.C. §1325(a)(6). [Doc. #136, p. 9]. Debtor is a party in interest with standing to object to a Creditor's proof of claim.

*v. Miller* (*In re Miller*), 513 F. App'x 566, 570 (6th Cir. 2013); *PCFS Fin. v. Spragin* (*In re Nowak*), 586 F.3d 450, 454–55 (6th Cir. 2009); *see also, Bavelis v. Doukas* (*In re Bavelis*), 773 F.3d 148, 154 (6th Cir. 2014).

If, as here, an objection to a claim is made, then the court "'shall allow' the claim 'except to the extent that'" the claim implicates any of the exceptions enumerated in §502(b). *Travelers*, 549 U.S. at 449 (quoting 11 U.S.C. §502(b)); *accord Official Comm. of Unsecured Creditors v. Dow Chem. Corp.* (*In re Dow Corning Corp.*), 456 F.3d 668, 680 (6th Cir. 2006)("If, as here, a party objects to a claim, §502 requires that the bankruptcy court allow an otherwise valid claim unless one of the exceptions enumerated in subsection (b) precludes allowance."); *see also, Pension Benefit Guar. Corp. v. Belfance* (*In re CSC Indus., Inc.*), 232 F.3d 505, 509 (6th Cir. 2000)("[B]ankruptcy courts have the statutory authority to determine the *allowability* and *amount* of the claim")(emphasis in original).

Thus, an objection to a claim can properly address three issues: (i) the validity of the debt; (ii) the amount due to the creditor as of the petition date; or (iii) whether the debt falls within a finite list of reasons under §502(b) for which the claim may be denied. *In re Diehl*, 2018 WL 2670489 at *1, 2018 Bankr. LEXIS 1625 at *2 (Bankr. N.D. Ohio June 1, 2018). "If an objection to a claim posits some other basis, it is not an objection to a claim as set forth in §502." *Id.*

"Ordinarily, bankruptcy courts tasked with allowing/disallowing claims against the estate utilize a claims process-specific burden-shifting framework." *In re Allied Consol. Indus., Inc.*, 602 B.R. 645, 665 (Bankr. N.D. Ohio 2019)(citing *Morton v. Morton* (*In re Morton*), 298 B.R. 301, 307 (B.A.P. 6th Cir. 2003)); *see also, Kelly v. Mace* (*In re Mace*), 573 F. App'x 490, 496 (6th Cir. 2014)("The burden of going forward with the evidence shifts during the claim filing and objection process."). "Initially, the claimant must allege sufficient facts to support a legal liability to the

claimant." *In re Mace*, 573 F. App'x at 496 (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 172–74 (3d Cir. 1992)).  If that is done, the burden of going forward shifts to the objector to produce evidence which, if believed, refutes at least one of the allegations that is essential to the legal sufficiency of the claim. *Id.*; *In re Bavelis*, 773 F.3d at 154.  If the objector refutes at least one of the allegations that is essential to the legal sufficiency of the claim, then "the burden again shifts to the claimant to prove the validity of the claim by the preponderance of the evidence." *In re Mace*, 573 F. App'x at 496.

Debtor's Objection identifies certain grounds for not allowing the claim enumerated in §502(b).  But Debtor's Objection also asserts grounds that are not enumerated in §502(b).  The grounds not enumerated in §502(b) are the challenge to the validity of the lien and Creditor's failure to provide Debtor with corporate records.  As this court explained at the hearing denying Debtor's Motion for Discovery to challenge the validity of the lien, a party challenging a lien must generally commence an adversary proceeding. [Doc. #105, p. 9].

Accordingly, the grounds properly identified for not allowing the claim include: (i) the proof of claim was not properly signed and contained certain omissions, (ii) Debtor is not personally liable on the debt, (iii) and the claim was not timely filed.  The court will address these grounds sequentially below.

## I.     The Proof of Claim's Conformity with the Rules

### A.     Creditor's Signature on the Proof of Claim

Debtor's objects to the claim because he asserts someone signed the claim other than a representative for Creditor, and thus the signature was not properly executed by an authorized agent.  Debtor failed to show that the claim was not properly executed by an authorized agent.  Therefore, Debtor's Objection on this ground must be overruled.

"A proof of claim shall be executed by the creditor or the creditor's authorized agent except

as provided in Rules 3004 and 3005." Fed. R. Bankr. P. 3001(b). Rules 3004 and 3005 (dealing, respectively, with claims filed by the debtor or trustee and claims filed by codebtors) do not apply here.

Creditor attached a declaration attesting, under the penalty of perjury, that Creditor's agent Mr. Shawaker executed the claim. [Doc. #74-6, Ex. F]. Mr. Sandretto, counsel for Creditor in the proceeding, testified Mr. Shawaker represented to Mr. Sandretto that he signed the proof of claim. Mr. Sandretto further testified that he received the proof of claim signed by Mr. Shawaker and then had the proof of claim electronically filed. Thus, it appears Mr. Shawaker, as president of Creditor, had authority to file the proof of claim on behalf of Creditor under Rule 3001(b) and Debtor failed to demonstrate a violation of Rule 3001(b) under these facts.

Debtor also challenges the signature on the proof of claim. Rule 3001(b) "is about who may sign for a creditor, not what constitute a signature." *In re Freeman-Clay*, 578 B.R. 423, 432 (Bankr. W.D. Mo. 2017). Even if Rule 3001(b) addressed what constitutes a signature, Debtor's argument still fails. Local Bankruptcy Rule 5005-4 adopts electronic filing, service and noticing protocols in this court's separate Electronic Case Filing (ECF) Administrative Procedures Manual. *Ott v. Somogye* (*In re Somogye*), 2020 WL 4810805 at *5, 2020 Bankr. LEXIS 1972 at *14 (Bankr. N.D. Ohio July 28, 2020)(Whipple, J.). Section I.A.2. of the Administrative Procedure Manual states ECF is mandatory for all attorneys. *Id.*; Administrative Procedure Manual, § II.B.1 ("[T]he signature of a registered user on a document filed electronically is indicated as s/name."). The form of the signature on the proof of claim, whether or not it is electronic, does not change the fact that Mr. Shawaker signed the proof of claim. Nothing in the Local Rules or the Administrative Procedures Manual prohibits an electronic signature on a proof of claim. Indeed, the Administrative Procedures Manual is specific with respect to the form of signature required for

13

other documents, such as the Declaration re: Electronic Filing of Documents and Statement of Social Security Number. No such requirement exists for proof of claims.[2] Thus, Debtor has failed to show that the signature on Creditor's proof of claim is invalid.

### B. The Omissions on the Claim

Under a fair reading of Debtor's Objection, Debtor argues the claim does not conform substantially to the appropriate official form because of certain omissions. Debtor challenges the failure to list the value of the Property, the amount of the claim that is secured or unsecured, and the interest rate. The failure to include a valuation of the Property does not impact allowance of the claim under §502(a). *Cf*, *In re Duggins*, 263 B.R. 233, 238 (Bankr. C.D. Ill. 2001)("The bifurcation or valuation process contemplated by 11 U.S.C. § 506(a) is not properly part of the claims allowance process."). As a result, allowance of a claim under §502(a) does not determine whether the claim is secured or unsecured under §506(a). Therefore, Debtor's argument on this ground must be rejected.

A proof of claim "shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). A review of Creditor's claim shows that it includes the name of the debtor; name and address of the creditor; amount of the claim; classification of the claim as secured; and basis for the claim being unpaid assessments. *See e.g., In re Samson*, 392 B.R. 724, 732 (Bankr. N.D. Ohio 2008)(listing the evidentiary requirements for a proof claim to conform substantially to the appropriate Official Form). The proof of claim attached the Extinguishment of Easements, Grant of Easements, and Declarations of Covenants, Conditions and Restriction establishing the interest rate for unpaid monthly installments.

Although Debtor challenges the failure to list the value the Property, the failure to list the

---

[2] Additionally, the Electronic Proof of Claim (ePOC) filing program, available to parties not represented by an attorney and registered CM/ECF filers, requires an electronic signature.

value of the Property does not impact the validity of the claim. *See e.g., In re Hill*, 304 B.R. 800, 802 n.1 (Bankr. S.D. Ohio 2003)("The proof of claim filed by [creditor] contains a line item for 'Value of Collateral.' [Creditor] left this item blank."). The claims allowance process under §501 and Rule 3001(f) deal with the amount of the allowed claim under §502. A properly filed proof of claim constituting prima facie evidence of the validity and amount of the claim, but does not establish an "allowed secured claim under §506(a)." *Id.* at 804 & n.9 (a valuation of the property is necessary to determine an allowed secured claim under §506(a), which was impossible because creditor did not include an assertion of the value of the property). Thus, assuming Creditor's claim is ultimately allowed, Creditor is presumed to have a valid claim and a valid security interest under applicable state law. In short, the value of the Property, and the amounts that are secured or unsecured with the corresponding interest rate, do not impact the validity and amount of the claim. *See, id.* ("The bifurcation or valuation process contemplated by 11 U.S.C. §506(a) is not properly part of the claims allowance process." (quoting *In re Duggins*, 263 B.R. 233)).

Accordingly, Debtor has failed to establish that the claim does not constitute *prima facie* evidence of the claim's validity and amount.

With that established, Debtor has the burden of overcoming the *prima facie* validity of the proof of claim by presenting evidence that is of equal probative force to that underlying Creditor's proof of claim. This means Debtor must produce evidence which would refute at least one of the allegations that is essential to the legal sufficiency of Creditor's proof of claim. *See e.g., In re Bavelis*, 773 F.3d at 154. Doing so would then shift the burden of persuasion back to Creditor. *See e.g., In re Morton*, 298 B.R. at 307. Debtor may also establish that the claim falls within a list of reasons under §502(b) for which the claim may not be allowed.

Thus, the court proceeds to the remaining grounds in Debtor's Objection. These grounds

15

are Debtor's personal liability on the debt, a challenge to the legal sufficiency of Creditor's proof of claim, and that the proof of claim was not timely filed a reason for not allowing the claim under §502(b).

## II.    Personal Liability

Debtor's Objection "argues that he does not have a personal debt to the [Creditor] that was required to be included." [Doc. #64, p. 6]. Debtor did not meet his burden of producing evidence refuting the allegation that Debtor is liable on the debt. Even if Debtor satisfied the burden of refuting the allegation that Debtor is personally liable, and the burden shifted back to Creditor, Creditor provided proof of the validity of Debtor's liability under the claim by a preponderance of the evidence.

Here, the Shared Maintenance Agreement determines Debtor's personal liability. Debtor testified that he signed that document. The Shared Maintenance Agreement provides that the expenses shall be annually budgeted and charged to each Property Owner. The term Property Owner is expressly defined to include Debtor. The Shared Maintenance Agreement further provides that the annually budgeted charges shall be assessed against each Property Owner. Furthermore, the Shared Maintenance Agreement provides the additional charges for failing to pay amounts due. *Cf. In re Lamb*, 171 B.R. 52, 55 (Bankr. N.D. Ohio 1994)(assessment and collection of the share of common expenses under declaration and by-laws of a condominium homeowner association are "essentially contractual"). Debtor is personally obligated on the debt under the express terms of the Shared Maintenance Agreement.

Debtor's Objection points to an email in which he sought "classification and authority claimed by [Creditor] to support any alleged debt." [Doc. #64, p. 6]. Debtor then states "[a]s usual, Mr. Bauer did not receive a response." [*Id.*]. Debtor's argument that the lack of a response by Creditor means Debtor is not personally liable is not evidence and cannot defeat the plain language

of the Shared Maintenance Agreement.

Next, Debtor argues he is not liable on the debt because the amount is lower than what is owed and thus incorrect. In other words, Debtor argues the proof of claim cannot be allowed because the amount of the debt is higher than the amount stated on the proof of claim. Debtor's argument that more is owed does not impact Debtor's personal liability. Mr. Sandretto and Mr. DeWood testified that the amount of $212,589.53 was based on the Accounts Receivable Aging Statement, but that further investigation revealed that certain interest and late charges had not been identified. For this reason, they agree that the amount owed exceeded $212,589.53.

In any event, under these facts, the court does not find the fact that the amount listed in the claim was less than the actual amount owed to be dispositive. *See,* Keith M. Lundin, Lundin On Chapter 13, §133.4, at ¶12, LundinOnChapter13.com ("Creditors often make mistakes in the filing of proofs of claim, and adjustments are required for many reasons—to reflect an error in calculations, to add missing attachments, to reflect negotiation with the debtor, to adjust for payment by third parties or the like."). Mr. Sandretto credibly testified that he was unaware of the bankruptcy case when he filed his notice of appearance in the foreclosure case on March 2, 2022. On March 22, 2022, after completing a review to comply with the requirements of Fed. R. Bankr. P. 9011, Mr. Sandretto filed Creditor's proof of claim. *See,* Keith M. Lundin, Lundin On Chapter 13, §133.4, at ¶17, LundinOnChapter13.com ("[I]t is appropriate for a creditor to file a proof of claim containing the creditor's best calculation of the amount of the claim and to then amend the claim when more precise calculation becomes possible.").

Here, if the proof of claim were allowed, an adjustment of the claim to reflect an error in calculations or to add missing attachments before confirmation of a plan, for example, would not

be prohibited.[3]  Put differently, amending the proof of claim before confirmation of any plan under these facts would be permitted, particularly where Debtor has failed to file an accurate and complete list of creditors and schedule of debts.

Debtor further argues that if he was not the owner of the Property, and thus not a "Property Owner" under the Shared Maintenance Agreement, then Debtor would not be personally liable on any amounts owed.  Debtor relies on the Midland Title report for his argument that either Debtor or Patricia L. Meyer could own Property.  He argues that since Patricia L. Meyer could own the Property, then Debtor was not the "Property Owner," and Debtor does not owe a debt to Creditor.  This argument fails because of the signed documents, and the course of dealing between the parties, established that Debtor owed a debt to Creditor, at the very least under a theory of an "account stated."

Under Ohio law, an "account stated" is a "contract, whether express or implied, and arises from an agreement or acknowledgement of the balance due as a result of a series of transactions or a course of dealing." *McIntosh v. Controlled Credit Corp.*, 2018 WL 4761456 at *7, 2018 U.S. Dist. LEXIS 168598 at *20 (S.D. Ohio Sept. 30, 2018)("An account stated is predicated upon prior transactions which create a debtor-creditor relationship between the parties to the account." (citation omitted)).  The following "fundamentals" must be present to establish a claim for money owed on an account:

> An account must show the name of the party charged.  It begins with a balance, preferably at zero, or with a sum recited that can qualify as an account stated, but

---

3/  "The idea of amending a proof of claim is not fundamentally offensive." Keith M. Lundin, Lundin On Chapter 13, §133.4, at ¶17, LundinOnChapter13.com.  In fact, Official Form 410 itself contemplates amendments.  Official Form 410 contains a box for creditors to check whether the claim amends one already filed. *See,* Official Form 410: Proof of Claim, Part 1, Question 4 ("Does this claim amend one already filed?"); *see also, In re Lewis*, 637 B.R. 861, 867 (Bankr. W.D. Ark. 2022)("Question 4 of Part 1 reflects that 'this claim amend[s] one already filed' . . . .").  The time allowed for amending a claim however is not endless. *See, United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010)(holding a bankruptcy court's order confirming a proposed plan was a final judgment); *In re Abrams*, 305 B.R. 920, 925 (Bankr. S.D. Ala. 2002)(refusing to allow amendment to a claim because the "plan is res judicata as to the treatment of a creditor's claim").

at least the balance should be a provable sum. Following the balance, the item or items, dated and identifiable by number or otherwise, representing charges, or debits, and credits, should appear. Summarization is necessary showing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due.

*Id.* 2018 WL 4761456 at *8, 2018 U.S. Dist. LEXIS 168598 at *21–22 (citation omitted). "An action upon an account may be proved by introduction of business records showing the existence of the account." *Id.* 2018 WL 4761456 at *8, 2018 U.S. Dist. LEXIS 168598 at *22 (citation omitted)(alteration omitted). "Absolute certainty of proof is not required, but there must be something upon which the court can form its judgment." *Bank of Am., N.A. v. Shailer*, 2021 WL 5145304 at *6, 2021 Ohio App. LEXIS 3851 at *15 (Ohio Ct. App. Nov. 5, 2021).

Creditor submitted an exhibit of account statements showing Debtor as the party charged. The beginning balance on July 31, 2013, was $63,69393. Debtor was charged $256.03 each month with a corresponding late charge. The amount owed as of December 31, 2021 was $337,314.93. The evidence, including the Shared Maintenance Agreement, Compromise and Settlement Agreement, and billing statements, established that the balance due, or liability on the balance due, was agreed, or at least acknowledge and not disputed, as a result of a course of dealing between the parties.

Accordingly, Debtor's argument that Patricia L. Meyer could be the owner of the Property and thus he does not owe a debt because he is not a "Property Owner," does not establish Debtor is not personally liable on the debt. 2020 WL 4036875 "The value of an account stated, other than the fact that it clarifies the status of the debtor's account, is that an action can be brought on an account stated as an alternative to an action for breach of contract." *McIntosh v. Controlled Credit Corp.*, 2018 WL 4761456 at *7, 2018 U.S. Dist. LEXIS 168598 at *21. Acknowledging liability on the balance due as a result of the course of dealing between Debtor and Creditor is enough to

establish Debtor is liable on the debt to Creditor.[4]

Indeed, Debtor testified he has not paid Creditor anything in approximately twenty years, and at the same time testified that an amount is owed but that amount is not $460,000.00. Debtor did not provide any evidence sufficient to refute the allegation Debtor is personally liable on the debt.

Finally, Debtor's affidavit states that Mr. Shawaker acknowledged Debtor was not using the Property for parking, which meant the monthly fee would not be owed. (Creditor's Ex. M ("I did receive one email from [Mr. Shawaker] indicating that there was not a monthly fee unless the owner of 190 W S Boundary used the PLC property for parking and/or ingress or egress. He also acknowledge that I was not using the property or assets of the PLC."). This is factually incorrect. Mr. Shawaker's correspondence states Debtor was not "a paying member." Nothing in this correspondence can be extrapolated to conclude the monthly installment was not owed. The documents Debtor executed determine the amount owed to Creditor, even if no one used the parking lot to access Debtor's Property. The Shared Maintenance Agreement includes costs other than parking. The Shared Maintenance Agreement, not Mr. Shawaker's email correspondence, establishes Debtor's personal liability.

For these reasons, Debtor did not meet his burden of producing evidence that would overcome Creditor's proof of claim. Even if Debtor did meet his burden, and the burden shifted back to Creditor, Creditor proved the validity of the claim by a preponderance of the evidence through the underlying signed contract, the course of contractual obligations, and the dealing between the parties and the statements beginning on December 1, 2013, demonstrating an

---

4/ Although Debtor listed a claim against City of Rossford, e.g., for breach of contract, Debtor did not list any claims against Creditor in Schedule A/B. [Doc. #9, p. 10].

increasing balance owed over the years.

There being no basis for finding that the money was not owed, the court proceeds to the remaining grounds in Debtor's Objection, that the claim was not timely filed, which is a reason for not allowing a claim under §502(b).

## III.    The Claim Was Not Timely Filed

The court now addresses Debtor's last ground for not allowing the claim.  Under a fair reading of Debtor's Objection, Debtor makes three arguments that the claim was untimely and cannot be allowed.  First, Creditor did not seek leave from the court to file the proof of claim after the bar date. [Doc. #64, p. 5](citing *In re Vrusho*, 634 B.R. 660 (Bankr. D.N.H. 2021)).  Second, Creditor has not shown excusable neglect for filing the proof of claim after the bar date. [*Id.*].  Third, the proof of claim was not timely filed. [*Id.*](citing *In re Pajian*, 785 F.3d 1161, 1163 (7th Cir. 2015)).  Creditor's Response argues untimely claims are not automatically barred because due process and equitable concerns require that a creditor without knowledge of a bankruptcy case require allowance of the claim. [Doc. #74].

### A.    The Failure to Move for Relief to File a Claim under Rule 3002(c)(6)

First, Debtor argues the claim cannot be allowed because Creditor did not file a motion to extend the bar date under Fed. R. Bankr. P. 3002. [Doc. #167, p. 2].  At the evidentiary hearing, Creditor stated seeking relief under Rule 3002(c)(6) was unnecessary because it could seek relief on other grounds.  Creditor's decision to rely on other grounds for filing its claim after the bar date is not a basis for not allowing the claim.  Therefore, Debtor's argument must be rejected.

Nothing obligates a creditor to move for relief under Rule 3002(c).  A proof of claim must be filed by the applicable deadline.  However, a "court may extend the time in which a creditor must file a proof of claim if" an exception under Fed. R. Bankr. P. 3002(c) applies. *In re Vrusho*, 634 B.R. 660, 666 (Bankr. D.N.H. 2021).  Rule 3002(c)(6)(A), in effect at the time of filing,

allowed a court to extend the time to file a proof of claim if "notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim because the debtor failed to timely file the list of creditors' names and addresses required by Rule 1007(a)." Fed. R. Bankr. P. 3002(c)(6)(A) (2017).

At the hearing, Creditor stated moving for relief under Rule 3002(c)(6) was either unnecessary or inapplicable.  Under the plain language of Rule 3002(c)(6), its provision for an extension of time would not be applicable because Debtor timely filed – with the Petition – a "list" of one creditor's name and address as required by Rule 1007(a).  The problem was, that "list," captioned "Creditors Matrix" [Doc. 1, p. 13] only included one creditor.  The matrix specifically states: "One creditor."  That one creditor was Wood County Treasurer, not Creditor Perrysburg Land Company.

Creditor further argued Rule 3002(c)(6) was not necessary because an untimely proof of claim is still considered timely if the party lacked notice, citing *In re Stacy*, 405 B.R. 872 (Bankr. N.D. Ohio).  Thus, the court cannot fault Creditor's decision to rely on *Stacy* rather than moving for an extension of time to file a proof of claim because the plain language of Rule 3002(c)(6) did not apply to a situation where a debtor had filed a matrix, but the matrix was incomplete.[5]

### B.    Excusable Neglect

Second, Debtor argues Creditor did not establish excusable neglect to file the claim.  But

---

5/  Rule 3002(c)(6) was amended, with an effective date of December 1, 2022, and now provides, in relevant part: "The motion may be granted if the court finds that the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim." Fed. R. Bankr. P. 3002(c)(6) (2022).  The reference to Fed. R. Bankr. P. 1007(a) was removed.  Before this amendment, Rule 3002(c)(6)(A) caused a split in the bankruptcy courts. *Compare In re Wulff*, 598 B.R. 459, 465 (Bankr. E.D. Wis. 2019)(finding that a list of creditors satisfied Rule 1007(a) despite the debtor incorrectly listing the creditor's address), *with In re Flint*, 640 B.R. 877, 881 (Bankr. D.S.C. 2022)(finding the creditor was entitled to an extension of the deadline to file a claim because the debtor omitted the creditor from the initial schedules and notices). *See generally In re Price*, 2019 WL 2895006 at *3 n.4, 2019 Bankr. LEXIS 1995 at *8 n.4 (Bankr. W.D. Va. July 3, 2019)(describing the split).  Again, under the plain meaning of the Rule in effect at the time Creditor's claim was filed, it was not applicable because a matrix was filed by Debtor.  Presumably, that is why Rule 3002(c)(6) was amended and broadened.

excusable neglect is not a basis for extending the bar date under Rule 3002(c). Thus, Debtor's argument is misplaced.

The excusable neglect standard found in Fed. R. Bankr. P. 9006(b)(1) is not applicable in a Chapter 13 case to allow an untimely creditor claim. *Belser v. Nationstar Mortg., LLC* (*In re Belser*), 534 B.R. 228, 235 (B.A.P. 1st Cir. 2015)(citing *Aboody v. United States* (*In re Aboody*), 223 B.R. 36, 39 (B.A.P. 1st Cir. 1998)); *see also*, 9 Collier on Bankruptcy, ¶ 3002.03[1] (16th ed. 2024)("Courts have uniformly held that no extension of the time fixed by Rule 3002(c) may be granted after the time has passed (except as specifically allowed by the provisions of Rule 3002(c)(1)–(6)). The court has no equitable power to extend the time fixed by Rule 3002(c). The excusable neglect standard provided by Rule 9006(b) does not permit the court to extend the time for filing proofs of claim under Rule 3002(c).").

Accordingly, in a Chapter 13 case "excusable neglect" is not a valid basis to allow a proof of claim filed by a creditor[6] after the deadline set forth in Rule 3002(c). *Jones v. Arross*, 9 F.3d 79, 81 (10th Cir. 1993)("Because Rule 3002(c) governs not only Chapter 7 but also Chapters 12 and 13, there is no excusable neglect exception available to Ms. Arross."); *Mondriquez-Torres v. Lopez (In re Lopez)*, 629 B.R. 322 (B.A.P. 1st Cir. 2021)("It is 'well settled in the First Circuit that

---

6/ While some earlier cases imprecisely assert that excusable neglect does not apply to Chapter 13 claims, more precisely: it does not apply to claims filed by creditors in a Chapter 13 case. Rule 9006(b)(3) does NOT limit the application of excusable neglect where the claim is filed by the debtor, or in the unlikely event a claim is filed by a Chapter 13 trustee. *See*, *In re Orosco*, 2020 WL 6054695 at *2, 2020 Bankr. LEXIS 2844 at *5 (Bankr. N.D. Tex. Oct. 9, 2020); *In re Morgan*, 2019 WL 548532 at *4, 2019 Bankr. LEXIS 387 at *13 (Bankr. E.D. Wis. Feb. 11, 2019)(stating that a debtor or trustee may seek an enlargement for proof of claim bar date upon showing cause and excusable neglect); *Matter of Burns*, 566 B.R. 918, 921-22 (Bankr. N.D. Ind. 2017)("If a creditor fails to file a timely claim, the debtor may do so on its behalf, within the 30 days following the creditor's deadline. Not only can the debtor file a claim for a non-filing creditor, the debtor can seek a belated extension of its own deadline 'on motion . . . where the failure to act was the result of excusable neglect.'"); *In re Norton*, 2017 WL 354320, at *3, 2017 Bankr. LEXIS 197 at *5; *In re Sprague*, 2013 WL 6670576 at *3, 2013 Bankr. LEXIS 5336 *7 (Bankr. D. Idaho Dec. 18, 2013); *In re Branch*, 228 B.R. 831, 834 (Bankr. W.D. Va. 1998)("Only the debtor and the trustee have the ability to extend the time limit of Rule 3004 [for excusable neglect]."). Claims filed by debtors (or trustees) are governed by Rule 3004, which is not listed in Rule 9006(b)(3). Therefore, the more general excusable neglect standard of Rule 9006(b)(1) applies, as it did in the Supreme Court's *Pioneer* decision, referenced below.

23

the proof of claim deadline in chapter 13 cases cannot be extended on the grounds of excusable neglect.'"); *In re Han-Hsien Tuan*, 2013 WL 5719505 at *4, 2013 U.S. Dist. LEXIS 152425 at *11 (D.N.J. Oct. 21, 2013); *In re Elias*, 2021 WL 2389329 at *3, 2021 Bankr. LEXIS 1554 at *8 (Bankr. D. Vt. June 10, 2021)(Creditor is "not entitled to relief based on excusable neglect under Rule 9006(b) since this is a chapter 13 case."); *In re Hogan*, 346 B.R. 715, 722 (Bankr. N.D. Tex. 2006).

Rule 9006(b)(3) specifically limits enlargement of time fixed by Rule 3002(c) to the circumstances referred to in that rule. It states: "**Enlargement limited**. The Court may enlarge the time for taking action under Rules 1006(b)(2), **3002(c)**, 4003(b), 4004(a), 4007(c), and 8002 only to the extent and under the conditions stated in those rules." *See also*, *In re Norton*, 2017 Bankr. LEXIS 197 at *5, 2017 WL 354320 at *3 (Bankr. N.D. Tex. Jan. 24, 2017).

Looking specifically at the Sixth Circuit, in *Tench*, the Bankruptcy Appellate Panel for the Sixth Circuit reversed a bankruptcy court's order to the extent allowance of the creditor's claim was based on excusable neglect. *In re Tench*, 2016 WL 2858792 at *3, 2016 Bankr. LEXIS 1989 at *8 (B.A.P. 6th Cir. May 11, 2016). *Tench* held "allowance of late-filed claims due to 'excusable neglect'" under Fed. R. Bankr. P. 9006(b)(3) is not applicable to the deadlines set by Rule 3002(c). *Id.*; *see also, Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993)("The 'excusable neglect' standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases."). Thus, the court cannot fault Creditor's decision not to request an extension of the bar date based on excusable neglect because the excusable neglect standard does not apply to enlarge the time in which a creditor must file a proof of claim in a Chapter 13 case.

## C. The Proof of Claim Was Not Timely Filed

Finally, the court addresses Debtor's primary basis for objecting to the claim. [Doc. #162

p. 2]. Debtor argues Creditor's claim was not timely filed after Creditor had knowledge of the case in time to timely file a claim. For the purposes Debtor's Objection based on timeliness, the court's relevant findings of fact can be summarized succinctly as follows.

On December 16, 2021, after informing Mr. DeWood (who was not Creditor's president at the time) of his intention to file bankruptcy, Debtor filed a petition for relief under Chapter 13 of the Code to stay the foreclosure. Debtor believes Creditor has a right to payment but disputes the amount owed. That said, Debtor did not list or schedule Creditor, despite Debtor's general understanding Creditor had a right to payment.

The bar date for filing proofs of claim was February 23, 2022. Because Creditor was not listed or scheduled, Creditor did not receive notice of the bar date.

Creditor presented evidence that it learned about the bankruptcy case after March 2, 2022. Creditor subsequently filed a claim on March 22, 2022, after the claims bar date.

Under these facts, Debtor argues the proof of claim was not timely filed and cannot be allowed because Creditor had knowledge of Debtor's Chapter 13 case. [Doc. #167 p. 6](citing *In re Jenkins*, 417 B.R. 462 (Bankr. N.D. Ohio 2009)(Speer, J.)). In response, Creditor contends an untimely claim is not automatically barred because principles of due process and equity demand that if a creditor lacks knowledge, they should be allowed to file a tardily claim as long as they do so promptly. [Doc. #166, p. 4](citing *In re Stacy*, 405 B.R. 872 (Bankr. N.D. Ohio 2009)(Speer, J.)).

The court finds that Debtor has not demonstrated that Creditor had knowledge of the filing of his Chapter 13 case before the claims bar date. Debtor's attempt to attribute knowledge to the Creditor were not persuasive.

Even though the court finds that the Creditor did not have knowledge of the filing or

pendency of the Chapter 13 case, it does not change the fact that Creditor's claim was not timely filed. *See,* 11 U.S.C. §502(b)(9). The court makes it decision based on the careful language of §502(b)(9) and Rules 3002 (as it existed at the time of filing on December 15, 2021) and 9006. Although Creditor's request seeks an equitable result, this court lacks discretion to deem the claim timely and effectively enlarging the period for filing a proof of claim. Doing so would disregard the unambiguous statutory language. Therefore, for the reasons below, the proof of claim will not be allowed. *See,* §502(b)(9).

To begin, for a claim to be allowed, a creditor in a Chapter 13 case must file a proof of claim.[7] Fed. R. Bankr. P. 3002(a); *In re Dumbuya*, 2017 WL 486917 at *4, 2017 Bankr. LEXIS 327 at *9 (Bankr. N.D. Ohio Feb. 6, 2017)(Whipple, J.); *see also, IRS v. Juntoff* (*In re Juntoff*), 76 F.4th 480, 482, (6th Cir. 2023)("When a debtor declares bankruptcy, the Bankruptcy Code generally grants each unsecured creditor an equal claim on his assets.").

Federal Rule of Bankruptcy Procedure 3002(c) notes that "a proof of claim is timely filed if it is filed not later than" the time set forth in the applicable rule. Section 502(b)(9) provides a filed claim is allowed except to the extent that "proof of such claim is not timely filed . . . ." 11 U.S.C. §502(b)(9). Section 502(b)(9), as discussed below, was added to the Code in 1994 to address a split in authority over whether bankruptcy courts may allow untimely filed claims in Chapter 13 cases. *In re Daniels*, 466 B.R. 214, 217 (Bankr. S.D.N.Y. 2011)("Section 502(b)(9), was added to the Code in 1994 to address a split in authority over whether bankruptcy courts may allow untimely filed claims in Chapter 13 cases.").

---

7/ Before December 1, 2017, Rule 3002(a) did not include a "secured creditor." Accordingly, a "secured creditor was not usually required to file a proof of claim to maintain its interest in the collateral to which its security attaches." *PCFS Fin. v. Spragin* (*In re Nowak*), 586 F.3d 450, 455 (6th Cir. 2009). After December 1, 2017, Rule 3002(a) was amended and provides that a secured creditor must filed a proof of claim for the claim to be allowed.

21-32089-jpg    Doc 174    FILED 03/29/24    ENTERED 03/29/24 15:50:26    Page 26 of 40

Section 502(b)(9) provides exceptions for tardy filings under §726(a)(2)(C),[8] and for filings by governmental units concerning a tax filed under §1308. Neither of those exceptions apply to Creditor's untimely claim. "Federal Rule of Bankruptcy Procedure 3002(c), therefore, governs this matter." *In re Daniels*, 466 B.R. at 216; *see also*, *In re Miller*, 2016 WL 3982681 at *1, 2016 Bankr. LEXIS 2640 at *2 (Bankr. N.D. Ohio July 19, 2016)("The language in Bankruptcy Rule 3002(c) is unambiguous and courts must apply the 'ordinary, contemporary, common meaning' of this language." (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979).

Rule 3002(c) lists certain exceptions to the time for filing claims, including fines by governmental unites and claims submitted under other fact patterns that do not apply to Creditor's claim. Further, Rule 9006(b) states circumstances in which a court may enlarge the time for taking action. However, as discussed above, Rule 9006(b)(3) limits extensions of time to file timely claims: "the court may enlarge the time for taking action under Rule 3002(c) only to the extent and under the conditions stated in that rule." *In re Dumbuya*, 2017 WL 486917 at *2, 2017 Bankr. LEXIS 327 at *5 (citation omitted)(alterations omitted). As discussed above, Creditor has not claimed that an exception under Rule 3002(c) applies. "Thus, while Rule 9006(b)(1) gives courts discretion to extend various deadlines under the Bankruptcy Rules, that discretion does not exist when Rule 3002(c) is implicated." *In re Bendezu*, 2016 WL 3462040 at *1, 2016 Bankr. LEXIS 2326 at *3–4 (Bankr. D.N.J. June 17, 2016).

"Section 502(b)(9) and Bankruptcy Rules 3002(c) and 9006(b)(3) are a comprehensive, unambiguous scheme that disallows untimely filed claims in Chapter 13 cases." *In re Brogden*, 274 B.R. 287, 289 (Bankr. M.D. Tenn. 2001)(Lundin, J.). "Read in conjunction, the Code and

---

[8] When faulty notice or other circumstances prevent a creditor from filing a timely claim, the Bankruptcy Code explicitly allows tardy claims in Chapter 7 cases. This statutory exception to the disallowance of untimely filed claims under subchapter II of Chapter 7 does not apply in Chapter 13 cases. *See*, 11 U.S.C. §103(b) ("Subchapters I and II of chapter 7 of this title apply only in a case under such chapter."). Section 726 is located in subchapter II of chapter 7.

Rules leave little to no discretion for a bankruptcy court to allow a late-filed claim in a chapter 13 case absent the few expressed exceptions for an extension set forth in Rule 3002(c)." *In re Tice*, 2022 WL 532741 at *2, 2022 Bankr. LEXIS 427 at *3–4 (Bankr. M.D. Ala. Feb. 22, 2022).

At the same time, it is also "well established that a debtor must exercise great care when completing their schedules so as to include any creditor that has any arguable grounds for asserting a claim against him." *In re Gilbert*, 38 B.R. 948, 950 (Bankr. N.D. Ohio 1984); *see also, Sawyer v. Budrow* (*In re Budrow*), 194 B.R. 172, 175 (Bankr. W.D. Tenn. 1996)("The official bankruptcy petition and its schedule forms asks for a listing of all creditors, including disputed ones.").

All debtors are required to file a list of creditors. *The Cadle Co. v. King* (*In re King*), 272 B.R. 281, 299 (Bankr. N.D. Okla. 2002)(citing 11 U.S.C. §521(1); Fed. R. Bankr. P. 1007(a)(1)). A debtor is "required to list even those creditors with contingent, unmatured, or disputed claims" even if a debtor believes no debt is owed. *In re Gurski*, 1996 WL 684397 at *4 (D. Conn. Jan. 25, 1996). A creditor is any entity that has a "claim" against the debtor that arose before or at the time of the order for relief. *In re King*, 272 B.R. at 299 (citing 11 U.S.C. §101(10)(A)). The Bankruptcy Code defines "claim" broadly and includes a "right to payment" that is "liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558 (1990)(citation omitted); *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)("In *Davenport*, we concluded that '"right to payment" [means] nothing more nor less than an enforceable obligation . . . .'" (citations omitted)).

This requirement is also set forth in the schedules themselves that must be filed with the court. Debtors are instructed to schedule all creditors with any right to payment. *See, In re Thomas*, 612 B.R. 46, 64 (Bankr. E.D. Pa. 2020). Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D) and Schedule E/F: Creditors who Have Unsecured Claims (Official

28

Form 106E/F) inform a debtor to "[b]e as complete and accurate as possible." *Id.* The instructions to complete Schedule D [Official Form 106D] and Schedule E/F [Official Form 106E/F] inform debtors that they must list the claims of all creditors, "even if the claims are contingent, unliquidated, or disputed." *See, id.* These instructions, available through the court's website, also inform debtors a "claim is *disputed* if you disagree about whether you owe the debt." *See, DeWayne v. First Nat'l Bank*, 2018 WL 4056986 at *4, 2018 Bankr. LEXIS 2580 at *11 (Bankr. S.D.C. Aug. 24, 2018). The instructions conspicuously warn debtors, in large bold type: "**Do not leave out any secured creditors**" [page 20] and "**Do not leave out any unsecured creditors**" [page 23]. *See*, Instructions, Bankruptcy Forms for Individuals, Schedule D: Creditors Who Have Claims Secured by Property, & Schedule E/F: Creditors Who Have Unsecured Claims. The instructions to complete Schedule D also specifically state to include anyone who has a lien or anyone "who is trying to collect a secured debt from you . . . ." *Id.*

Accordingly, the Bankruptcy Code generally imposes on debtors "an affirmative duty to disclose any transaction that might raise even an arguable claim by or against" a debtor. *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787 F.2d 1352, 1362 (9th Cir. 1986); *In re King*, 272 B.R. at 299 ("The obligation to list all creditors is part of the debtor's duty of full disclosure that is the *quid pro quo* for the fresh start provided by the discharge."). "The debtor is not permitted to omit creditors from the list because the debtor does not want those creditors affected by the bankruptcy case or does not want them to know about the case or for any other reason." *In re Blessing*, 2021 WL 4876936 at *4, 2021 Bankr. LEXIS 2886 at *8 (Bankr. D.N.M. Oct. 19, 2021)(quoting *In re King*, 272 B.R. at 299)(internal quotation marks omitted); *accord In re Thomas*, 612 B.R. at 64. This obligation to list creditors on the schedules ensures a debtor establishes the domain of participants in the debtor's case and allows them "to be notified of the of the bankruptcy

proceedings, exercise their rights under the Bankruptcy Code to protect their interests, and participate in any distribution from the estate." *In re Gilbert*, 38 B.R. at 950; *cf. Birkett v. Columbia Bank*, 195 U.S. 345, 349 (1904)(generally recognizing some of the debtor's duties under the Bankruptcy Act of 1898, including filing a list of creditors).

In a Chapter 13 case, the importance of this obligation is evident. Properly listing creditors on the schedules ensures creditors receive notice of the Chapter 13 case. Receiving notice of the Chapter 13 case allows the bar date to "establish the universe of participants in the debtor's case" and accomplishes the goal of claims adjudication by assuring "that each creditor *which is part of that universe* ultimately participates" in the case. *See, IRS v. Kolstad* (*In re Kolstad*), 928 F.2d 171, 174 (5th Cir. 1991).

Here, the Debtor's failure to schedule Creditor was wrongful. While the Debtor is *pro se*, this is his fifth Chapter 13 case, having previously filed for relief under case numbers: 97-33052, 19-31793, 19-33534, and 21-31314. While Debtor only listed one creditor, four claims were filed in the case. Two were timely filed by Wood County entities, but the City of Perrysburg's claim for $15,755.62 (which has not been objected to) was filed after Creditor's claim.

Against this backdrop, the court must consider two facts in tension. The first is Debtor's failure to accurately complete his schedules. The second is the filing of the proof of claim after the bar date. The question is whether allowance of the claim filed after the bar date is the proper remedy under the Bankruptcy Code and Rules based on Creditor's lack of notice. That is, despite §502(b)(9), can the proof of claim nonetheless be considered timely. The answer, under the law at the time this case was filed, is no. Section 502(b)(9) precludes the remedy Creditor seeks and this court lacks the discretion to find Creditor's claim was timely filed. *Cf. Law v. Siegel*, 571 U.S. 415, 424 (2014)(declining to read into the Bankruptcy Code an exception Congress did not include

in its "meticulous" and "carefully calibrated" scheme.

Creditor argues against this conclusion and asserts that an untimely proof of claim is not automatically barred. Creditor points to equitable notions and fundamental constitutional due process considerations that allow the court to essentially extend the bar date by allowing Creditor's claim. In support of this argument, Creditor relies on *In re Stacy*, 405 B.R. 872 (Bankr. N.D. Ohio 2009).

### A. Equitable Concerns

The first issue is whether equitable concerns warrant deeming the claim timely filed. The plain language of §502(b)(9) and Rules 3002(c) and 9006(b) preclude the application of principles of equity. Equitable concerns are not sufficient grounds for deviation from the plain meaning of the Bankruptcy Code and Rules.

As the Supreme Court and the United States Court of Appeals for the Sixth Circuit have often reminded bankruptcy courts: "We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." *Law v. Siegel*, 571 U.S. at 424 (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 24–25 (2000); *United States v. Noland*, 517 U.S. 535, 543 (1996); *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455 (1940)); *accord Michel v. Federated Dep't Stores, Inc.* (*In re Federated Dep't Stores, Inc.*), 44 F.3d 1310, 1318 (6th Cir. 1995)("We recognized certain inherent equitable powers of a bankruptcy judge, but we concluded that those powers 'must be exercised within the confines of the Bankruptcy Code.'" (quoting *Childress v. Middleton Arms, L.P.* (*In re Middleton Arms, L.P.*), 934 F.2d 723, 724 (6th Cir. 1991)(quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. at 206))); *see also, In re Smith*, 999 F.3d 452, 456 (6th Cir. 2021)(recognizing no circuit court has

accepted creditor's argument that a debtor lacks a right to dismiss under 11 U.S.C. §1307(b) after *Law v. Siegel* held that equitable powers "must and can only be exercised within the confines of" the Bankruptcy Code); *Brown v. Ellmann* (*In re Brown*), 851 F.3d 619, 625 (6th Cir. 2017)(noting *Law* "merely reinforces the common-sense notion that bankruptcy courts may not use their discretionary powers to reach results that are inconsistent with the *clear* meaning of the Bankruptcy Code"). A determination that Creditor's untimely claim is nonetheless "timely" would not only contradict §502(b)(9) but would override the explicit mandate under §502(b)(9) that a claim is allowed except to the extent such proof of claim was not timely filed. *See Law*, 571 U.S. at 424 ("The Code's meticulous—not to say mind-numbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions.").

### B. Due Process Concerns

Second, Creditor cites *In re Stacy*, 405 B.R. 872 (Bankr. N.D. Ohio 2009), and argues fundamental due process considerations allow the court to exercise its equitable powers to allow the untimely claim. Creditor's constitutional argument is blunted by the fact, while disadvantaged by not having an allowed claim, Creditor is not "prejudiced" in the constitutional due process sense of that word. *See e.g., In re Fryman*, 2019 WL 2612763 at *3, 2019 Bankr. LEXIS 1945 at *7–8 (Bankr. E.D. Ky. July 24, 2019)("Creditor also argues that the inability to file a proof of claim owing to the lack of notice raises due process concerns. But creditors who do not receive sufficient notice of a bankruptcy case have a remedy in §523(a)(3), applicable to chapter 13 cases through §1328(a)."); *In re Johnson*, 2016 WL 106595 at *3, 2016 Bankr. LEXIS 66 at *6 (Bankr. W.D. Wis. Jan. 8, 2016)("PHEAA's unscheduled claim will not be forfeited because it will not be discharged. Therefore, PHEAA's due process rights are not denied by the disallowance of its late-

filed claim." (footnote omitted)); *In re Phillips*, 2015 WL 5772191 at *2, 2015 Bankr. LEXIS 3315 at *6 (Bankr. Wis. E.D. Sept. 30, 2015)(rejecting creditor's due process argument because §523(a)(3) and §362(d) provide late-notified creditors with a means of avoiding any deprivation of property that might offend the due process guarantee); *In re Windom*, 284 B.R. 644, 647 (Bankr. E.D. Tenn. 2002).

Before addressing why allowance is the improper remedy, some of the authority on untimely claims in the Sixth Circuit must be considered.

"The Sixth Circuit has not addressed the question whether §502(b)(9) disallows late-filed claims in Chapter 13 cases when the creditor lacks timely notice." *In re Brogden*, 274 B.R. at 290–91. In *Brogden*, a well-reasoned decision by Judge Lundin, the court sustained the Chapter 13 trustee's objection to the IRS's claim because the claim was untimely under §502(b)(9). *Id.* at 288. In sustaining the objection, the court rejected the IRS's argument that "fundamental fairness," which is akin to "due process," precludes applying §502(b)(9) when there is a lack of notice. *Id.*

In sustaining the objection, Judge Lundin discussed the law in the Sixth Circuit for untimely claims. *In re Brogden*, 274 B.R. at 291. Beginning with *Cardinal Mine Supply*, the Sixth Circuit held a priority creditor with untimely notice that files a tardy claim does not lose its distribution priority in a Chapter 7 case. *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087, 1091–92 (6th Cir. 1990). Then, in *Century Boat*, the Sixth Circuit refined *Cardinal Mine Supply*'s holding and reaffirmed "the principle that a priority creditor who fails to receive notice of the bankruptcy and consequently files an untimely proof of claim is not barred from receiving priority distribution as a matter of law." *IRS v. Century Boat Co. (In re Century Boat Co.)*, 986 F.2d 154, 158 (6th Cir. 1993). *Century Boat* made a crucial point by clarifying that "*Cardinal Mine Supply* established a narrow exception for priority creditors who lack notice of the

bankruptcy." *Id.*

It is important to note, as *Brogden* did, *Cardinal Mine Supply* and *Century Boat* were Chapter 7 cases decided before Congress enacted §502(b)(9) in a period when the "controversy raged whether untimely filed proofs of claim were disallowed." Keith M. Lundin, Lundin On Chapter 13, § 135.6, at ¶1, LundinOnChapter13.com. Congress enacted §502(b)(9) to explicitly state that untimely filed claims are not allowed, at least in Chapter 13 cases. It is also important to note, as *Brogden* did, the Sixth Circuit distinguished *Century Boat* and *Cardinal Mine Supply* before the effective date of §502(b)(9) "to conclude that untimely-filed claims" are not allowed in Chapter 13 cases: "the amendment reveals Congress' intent to demand that claims be timely filed." *IRS v. Chavis*, 47 F.3d 818, 823 (6th Cir. 1995); *see also, In re Jenkins*, 417 B.R. 462, 467 (Bankr. N.D. Ohio 2009)("[Section 502(b)(9)] was added to the Bankruptcy Code in 1994 for the specific purpose of overruling those cases which did not recognize tardiness as a basis for the disallowance of a proof of claim."). "*Chavis* recognizes that Chapter 13 cases are fundamentally different than Chapter 7 cases with respect to the importance of the timely filing of claims." *In re Brogden*, 274 B.R. at 292; *accord In re Zarske*, 2022 WL 4111376 at *1, 2022 Bankr. LEXIS 2476 at *3 (Bankr. E.D. Mich. Sept. 8, 2022)("The Sixth Circuit case of [*Chavis*] holds that late filed claims in a Chapter 13 should not be allowed 'so that the efficacy of the plan may be determined in light of the debtor's assets, debts and foreseeable earnings.'" (citing *Chavis*, 47 F.3d at 824); *see also, United States v. Simon* (*In re Burnham, Connolly, Oesterle and Henry*), 98 F.3d 1341, 1996 WL 580475 at *4, 1996 U.S. App. LEXIS 26634 at *11 (6th Cir. Oct. 8, 1996)("In a Chapter 13 case where notice was received, this circuit seems to have held that tardiness in the filing of a proof of claim bars recovery altogether." (citing *Chavis*)). Thus, *Cardinal Mine Supply* and *Century Boat Co.* are "not applicable in this situation." *In re Windom*, 284 B.R. at 647.

With this background, Creditor's due process argument under *In re Stacy*, 405 B.R. 872 (Bankr. N.D. Ohio 2009), can be addressed. Creditor argues principles of due process warrant deeming the claim timely filed. The court need not address whether not allowing the claim might violate Creditor's due process rights because Debtor does not contend that Creditor's claim should not be allowed *and* discharged; Debtor only contends the claim should not be allowed. Accordingly, this matter does not necessarily invoke due process rights as much as the procedural and substantive rights under the Code. *See, Brenner's Restoration, Inc. v. Somerville* (*In re Somerville*), 605 B.R. 700, 703 n.3 (Bankr. D. Md. 2019). In other words, the refusal to extend the time to file a claim is "justified by the existence of another means for creditors to safeguard their rights: nondischargeability." *In re Mazik*, 592 B.R. 812, 815 (Bankr. E.D. Pa. 2018).

For this reason, "most courts have refused to use their equitable powers to extend the deadline, permitting extension only according to the express exceptions in Rule 3002(c) . . . ." *Id.*; *see also, In re Lovo*, 584 B.R. 79, 80 (Bankr. S.D. Fla. 2018)("[T]his Court follows those courts that do not believe a bankruptcy court has the authority to judicially create a lack of notice exception to timely filing a proof of claim when that exception is not listed in the applicable rule."); *In re Carlin*, 2014 WL 5023653 at *3, 2014 Bankr. LEXIS 4292 at *8 (Bankr. S.D.N.Y. Oct. 7, 2014); *In re Daniels*, 466 B.R. at 217 ("The court has no equitable power to extend the time fixed by Rule 3002(c)." (citation omitted)); *In re Lewis*, 2017 WL 1839165 at *3 n.10, 2017 Bankr. LEXIS 1249 at *11 n.10 (Bankr. S.D.N.Y. May 5, 2017); *In re Fryman*, 2019 WL 2612763 at *3, 2019 Bankr. LEXIS 1945 at *8 ("Creditor does not explain why its right to due process is not sufficiently protected through the Code so as to compel the Court to ignore the plain text of the pertinent Rules."). As previously recognized, "Rule 3002(c) is unambiguous" and this court is bound to the "ordinary, contemporary, meaning" of this language. *In re Miller*, 2016 WL 3982681

at *1, 2016 Bankr. LEXIS 2640 at *2.

The case of *In re Johnson* emphasizes this court's concerns regarding allowance of untimely claims based on principles of due process. *In re Johnson*, 2016 WL 106595 at *1 ("In this case, the Trustee urges the Court to reconsider its ruling in *In re Washington*, 483 B.R. 871 (Bankr. E.D. Wis. 2012), allowing a late-filed proof of claim in a Chapter 13 case for a creditor without notice. After careful consideration, the Court grants the Trustee's request."). In *Johnson*, the creditor was not listed in the schedules and did not receive notice of the claims bar date until after the bar date expired. *Id.* The creditor filed a claim after the bar date and the Chapter 13 trustee objected. *Id.* The creditor argued the claim should be allowed based on the due process considerations expressed in *In re Washington*, 483 B.R. at 876 (relying on basic principles of due process). *In re Washington* is analogous to *In re Stacy*, which Creditor relies on. *See, In re Johnson*, 2016 WL 106595 at *1 ("[Creditor] relies on the decision in *Washington*, in which I allowed a late-filed student loan claim based on due process considerations and the implication that the claims deadline in Bankruptcy Rule 3002 only applies to creditors who have received notice of the claims bar date."). The court in *Johnson* disagreed, holding that *Washington* should not be followed.

Critically, *Johnson* recognized *Law v. Siegel*, and subsequent authority, supported "reconsideration of the position taken in *Washington*." *See, In re Johnson*, 2016 WL 106595 at *1 ("In *Law v. Siegel*, the Supreme Court emphasized that the equitable powers of the bankruptcy courts must be exercised within the confines of the Bankruptcy Code."). After considering the caselaw, *Johnson* agreed the bar date "does not offend the due process clause because it does not work a deprivation of property." *See, In re Johnson*, 2016 WL 106595 at *2 ("Rather than the ability to file a claim and share in the plan distributions, it is the discharge of the debt without

36

effective notice that violates the Fifth Amendment."). *Johnson* concluded that the court "should not exercise equitable powers to allow [creditor's] late claim in contravention of express provisions of the Bankruptcy Code and Rules. And enforcing the claims bar date for an unscheduled creditor without notice in a Chapter 13 case does not violate the creditor's due process rights, because the creditor's claim will not be discharged." *Id.* at \*4. *Johnson* reconsidered the case of *Washington* in light of the *Law v. Siegel*'s broad holding that a bankruptcy court is unable to substitute underlying law in the name of equity. Thus, *Johnson* did not adhere to the rule in *Washington*.

For essentially the same reasons expressed in *Johnson*, the court cannot follow *In re Stacy,* although the concerns addressed in *Stacy* are valid. "When the untimeliness of a proof of claim results from the debtor's failure to schedule a creditor, the consequences of untimely filing are complicated by constitutional considerations." Keith M. Lundin, Lundin On Chapter 13, §135.7, at ¶18, LundinOnChapter13.com. As *Stacy* noted, the "failure of the Bankruptcy Rules to provide relief to creditors who receive no notice of a bankruptcy and have no knowledge of it cannot deprive those creditors of their substantive right not to have their property rights taken away without notice" *In re Stacy*, 405 B.R. at 876 (quoting *Cardinal Mine Supply*, 916 F.2d at 1091)(internal quotation marks omitted).

In any event, *allowance* of the claim is not what this court can "provide [as the] remedy." *Id.* (citation omitted); *cf. Law*, 571 U.S. at 421 (recognizing that bankruptcy courts cannot rely on equity in a manner inconsistent with the Code). Additionally, as discussed above, not allowing the claim does not deprive Creditor of a substantive right not to have their property right taken away. *See, In re Windom,* 284 B.R. 644, 646–47 (Bankr. E.D. Tenn. 2002); Keith M. Lundin, Lundin On Chapter 13, §135.7, at ¶18, LundinOnChapter13.com ("Perhaps more accurately, other courts have held that there is no discretion to grant an unscheduled creditor an extension of the bar

37

date for filing proofs of claim in Bankruptcy Rule 3002(c), but disallowance of an unscheduled creditor's untimely claim does not mean that the debt is subject to discharge.").

Thus, Creditor's argument under principles of due process is undermined by the fact that it is not prejudiced in a way that violates constitutional protections. *See e.g., In re Fryman*, 2019 WL 2612763 at *3, 2019 Bankr. LEXIS 1945 at *8; *In re Windom*, 284 B.R. at 647; *see also, In re Mazik*, 592 B.R. at 815 ("Some courts have held, based on general principles of equity or due process, that a creditor deprived of notice of the bar date is entitled to file a late claim. However, most courts have refused to use their equitable powers to extend the deadline . . . ." (footnote omitted)); *In re Lovo*, 584 B.R. at 80 ("Although some courts have allowed late-filed claims based on considerations beyond those listed in Rule 3002(c), this Court follows those courts that do not believe a bankruptcy court has the authority to judicially create a lack of notice exception to timely filing a proof of claim when that exception is not listed in the applicable rule." (footnote omitted)).

While the focus of constitutional due process concerns is dischargeability, the Bankruptcy Code provides several additional mechanisms may serve to protect the rights of creditors who did not receive timely notice of a bankruptcy filing, notwithstanding the prohibition against the allowance of the untimely claim. *Brogden*, for example, recognized §502(b)(9) is balanced by at least six remedies under the Bankruptcy Code, "almost all of which offer substantial advantages" to participation in plan payments. *In re Brogden*, 274 B.R. at 293. These remedies include: (i) relief from stay for cause under §362(d)(1);[9] (ii) dismissal for cause under §1307(c); (iii) conversion to Chapter 7 under §1307(c); (iv) relief from the confirmation order; (v) revocation of confirmation under §1330; and (vi) exception to discharge. *See, In re Brogden*, 274 B.R. at 293–

---

9/ *See e.g., In re Bauer*, 2020 WL 837366, at *2 (Bankr. N.D. Ohio Feb. 19, 2020)(granting the creditor, Wood County Health District, relief and lifting the automatic stay imposed by 11 U.S.C. §362(a)).

94; *see also, Matthews v. Gamboa* (*In re Gamboa*), 2020 WL 118591 at \*9, 2020 Bankr. LEXIS 56 at \*23 (Bankr. W.D. Okla. Jan. 9, 2020)(noting an untimely a proof of claim cannot be allowed but the Bankruptcy Code specifically provides a remedy for creditors who did not receive proper notice in time to file a timely claim).

Creditor also retains, and will continue to retain, its lien against the Property. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); Fed. R. Bankr. P. 3002(a) ("A lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim.")

In addition, in this case, where the Chapter 13 Plan has not been confirmed, Creditor can oppose confirmation on the grounds that Chapter 13 case was not filed good faith. *See*, §1325(a)(7). Further, Creditor is not prohibited from seeking dismissal of the Chapter 13 case with prejudice, preventing the Debtor from filing another bankruptcy for some period of time. Finally, nothing prevents Creditor from using any or all of its rights in combination.

It is worth noting that these alternative remedies may provide Creditor with the functional equivalent of allowance of its proof of claim in this case. The Debtor has acknowledged that if the proof of claim of Creditor were allowed, even in just the amount presently reflected in Creditor's proof of claim, his Chapter 13 case would not be feasible and would have to be dismissed.

"From an equitable perspective, this was a difficult decision for the Court. Debtors should not gain an advantage by failing to properly schedule creditors." *In re Bendezu*, 2016 WL 3462040, at \*2 (Bankr. D.N.J. June 17, 2016). This court is also "aware of the seeming harshness of this result. The Bankruptcy Code, however, specifically provides" other available remedies. *Jones v. Arross*, 9 F.3d 79, 81 (10th Cir. 1993). Allowance of the claim, however, is not one of the available remedies.

In the end, the basis for the "claim objection is simple." *In re Zarske*, 2022 WL 4111376 at *1, 2022 Bankr. LEXIS 2476 at *2. The claim was "filed late and should be disallowed under Federal Rule of Bankruptcy Procedure 3002(c), which requires the proof of claim be timely filed." *Id.*

For all these reasons, the proof of claim was not timely filed. Creditor's claim was filed after the bar date. This court lacks the discretion to effectively enlarge the time for filing claims by deeming an untimely claim timely. As Creditor's claim was not timely filed, it will not be allowed. *See,* 11 U.S.C. §502(b)(9).

The court will enter a separate order in accordance with this Memorandum of Decision.

###